

**SO ORDERED.**

**SIGNED this 5 day of November, 2015.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:                                                                CASE NO. 13-05806-8-DMW

SANDRA FAULKNER BUTTERWORTH
            DEBTOR                                                CHAPTER 11

## MEMORANDUM OPINION
## DENYING APPLICATION FOR ADMINISTRATIVE EXPENSE

This matter comes on to be heard upon the Application for Administrative Expenses Pursuant to Section 503 ("Application") filed by Only Fools & Horses, LLC ("OFH") on May 29, 2015, the Debtor's Objection to Application for Administrative Expense ("Objection") filed by Sandra Faulkner Butterworth ("Debtor") on June 22, 2015, the Objection to Application for Administrative Expenses filed by the United States Bankruptcy Administrator ("BA") on June 22, 2015, and the Response and Objection to Application for Allowance of Administrative Expenses filed by TrustAtlantic Bank ("TrustAtlantic") on July 7, 2015. The court conducted a hearing in New Bern, North Carolina on August 20, 2015.  John G. Rhyne, Esq. appeared for OFH, David J. Haidt, Esq. appeared for the Debtor, Christopher Scott Kirk, Esq. appeared for the BA, and John C. Bircher, III, Esq. appeared for TrustAtlantic.  Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

BACKGROUND

2. The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on September 13, 2013 ("Petition Date"). On January 14, 2014, the Debtor's case was voluntarily converted to a case under Chapter 11. The Debtor filed her initial Chapter 11 Plan of Reorganization on August 13, 2014, and the court confirmed the Debtor's Second Amended Plan of Reorganization ("Amended Plan") on June 9, 2015.

3. On December 16, 2008, the Debtor executed an Irrevocable Trust Agreement ("Trust") of which the Debtor was the beneficiary. On December 17, 2008, the Debtor assigned her interest in several separate limited liability companies to the Trust.

4. In 2011, two years prior to the Debtor filing her petition, OFH began collection efforts on a debt asserted against the Debtor. On April 27, 2012, a Default Judgment ("Default Judgment") was entered in favor of OFH against the Debtor and was docketed in a Tennessee state court. Since 2011, OFH has attempted to collect on the Default Judgment until the filing of the present case. On September 25, 2013, OFH filed a Proof of Claim for Claim #4 in the amount of $140,524.35 resulting from the Default Judgment.

5. On the Petition Date, the Debtor disclosed the existence and interest in the Trust on Schedule B and on the Debtor's Statement of Financial Affairs. The Debtor listed the Trust as having a value of $1.00.

6. Throughout the course of the bankruptcy case, OFH has taken the position that the creation of the Trust, and the assignments of the Debtor's interest in several limited liability companies to the Trust, were fraudulent conveyances under 11 U.S.C. § 548(e). OFH objected to and contested the Debtor's efforts to have the court confirm a plan of reorganization that did not disclose the value of assets within the Trust, and that did not provide, in OFH's view, a satisfactory dividend to the creditors.

7. On May 29, 2015, OFH filed the Application, requesting that the court enter an order allowing OFH an administrative claim for its attorney's fees and expenses in the amount of $49,888.03 pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4). The total reimbursement sought appears to represent all legal expenses incurred by OFH beginning in 2011 in connection with its retention of attorneys hired or utilized to collect the Default Judgment.

DISCUSSION

8. <u>Applicable Statutes</u>. The Application seeks compensation under 11 U. S. C. §§ 503(b)(3)(D) and 503(b)(4).

    a. Section 503(b)(3)(D), in relevant part, states that "there shall be allowed, administrative expenses . . . including the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D).

    b. Section 503(b)(4) states that "there shall be allowed administrative expenses. . . including . . . reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services . . . and

3

reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

9. <u>Substantial Contribution Under Section 503(b)(3)(D)</u>.

　　a.　　Under the "American Rule," each party is responsible for its own attorney's fees and a prevailing litigant is not entitled to attorney's fees unless specifically provided for by statute or by contract. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y.*, 421 U.S. 240 (1975). Even though Section 503 creates an opportunity for an applicant to receive an administrative claim for fees, the court must give deference to the priority structure created by Congress. Statutes related to priority expenses should be and are generally construed narrowly. A narrow construction "is consistent with the general doctrine that priority statutes, such as Section 503(b), should be strictly construed to preserve the estate for the benefit of creditors." *In re Asarco LLC*, No. 05-21207, 2010 WL 3812642, at *8 (Bankr. S.D. Tex. Sept. 28, 2010). (citations omitted). "Activities of a creditor . . . that are ordinary, expected, routine, or duplicative do not constitute a substantial contribution to a debtor's estate." *Id*. (citations omitted).

　　b.　　This court previously held that Sections 503(b)(3)(D) and 503(b)(4) allow reimbursement of fees and expenses where it is demonstrated that a creditor has made a substantial contribution to the bankruptcy case. *In re Shangra-La, Inc.*, 213 B.R. 303, 306 (Bankr. E.D.N.C. 1997) *(rev'd on other grounds)*, 167 F.3d 843 (4th Cir. 1999). While there is currently no precedent in the Fourth Circuit defining "substantial contribution" under Section 503, many other courts have analyzed this statute and defined the terms.

　　c.　　"'[S]ubstantial contribution' is not a defined term in the Code. However, the term has been judicially interpreted to mean contributions to the bankruptcy case that

4

'foster and enhance, rather than retard or interrupt the progress of reorganization.'" *In re On Tour, LLC*, 276 B.R. 407, 417 (Bankr. D. Md. 2002) citing *In re Big Rivers Elec. Corp.*, 233 B.R. 739, 746 (W.D. Ky. 1998), *see also Hall Fin. Grp., Inc. v. DP Partners, Ltd. (In re DP Partners, Ltd.),* 106 F.3d 667, 672 (5th Cir. 1997), *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3rd Cir. 1994), *In re Ace Fin. Co.,* 69 B.R. 827, 829 (Bankr. N.D. Ohio 1987), *In re Richton Int'l Corp.,* 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981). The *On Tour* court considered the decision in *Big Rivers Electric Corporation* regarding Section 503, noting that, "the term 'substantial' accommodates the section's twin goals of encouraging meaningful participation in the bankruptcy process while keeping fees and expenses minimal to maximize the estate for the creditors." *Id.* at 418 (quoting *Big Rivers,* 233 B.R. at 746).

  d. A leading definition of "substantial contribution" is currently found in the case of *In re Paolino,* 71 B.R. 576, 580 (Bankr. E.D.Pa. 1987). The *On Tour* decision cited to *In re Paolino* when that court held, "that the services must provide a 'demonstrable benefit to the debtor's estate, the creditors, and, to the extent relevant, the stockholders,' in order to be compensable." *In re On Tour, LLC*, 276 B.R. 407, 418 (Bankr. D. Md. 2002) (quoting *In re Paolino*, 71 B.R. at 580.).

  e. OFH argued that it made a substantial contribution to the case by discovering the existence of the Trust. OFH states that the discovery of the Trust and the allegations made by OFH of fraudulent conveyances from the Debtor to the Trust led to a significant increase in the dividend that would be paid to unsecured creditors by the Debtor. OFH believes that these efforts constitute a "substantial contribution" to the case as contemplated by Section 503, and that OFH should be reimbursed for the attorney's fees

5

expended and the costs incurred in the case. Before this court is the determination of whether OFH's actions and efforts constitute "substantial contribution" as contemplated by Section 503.

  f. The Fifth Circuit developed a standard for determining whether a creditor has made a "substantial contribution" to the bankruptcy estate as contemplated by Sections 503(b)(3)(D) and 503(b)(4) in *Matter of DP Partners Ltd. P'ship.* The *DP Partners* court posited that "the policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process." *Matter of DP Partners Ltd. P'ship*, 106 F.3d 667, 672 (5th Cir. 1997).

  g. The court in *DP Partners* found that a "substantial contribution" in Section 503(b)(3)(D) means a contribution that is "considerable in amount, value or worth." *Id*. at 673. The Fifth Circuit in *DP Partners,* also held that a "direct benefit must be provided to the debtor's estate in order to be eligible for payment for a substantial contribution." *Id*., *see also In re Buttes Gas & Oil Co.,* 112 B.R. 191, 194 (Bankr. S.D. Tex. 1989).

  h. The court in *Asarco, LLC* performed a thorough and valuable analysis of the Fifth Circuit's Decision in *DP Partners* and the preceding case law and held that "*failing to show a direct, significant and demonstrable benefit to the estate caused by the actions of the applicant is, therefore, fatal* to a substantial contribution claim." *Asarco*, 2010 WL 3812642, at *7 (emphasis added)(citations omitted). The claimant must establish "by a preponderance of the evidence, that they caused a substantial contribution if they wish to recover the fees and expenses associated with their making such a contribution." *Id.*

      i.      *Asarco* held that Section 503(b)(3)(D) "should not become a vehicle for reimbursing every creditor who elects to hire an attorney." *Id.* at *8. The court in *Asarco* also asserted that substantial contribution claims may only be granted in "unusual or rare circumstances." *Id.*

      j.      The *Asarco* court further held that to meet the burden of proof required to establish a substantial contribution claim, the claim must show that the services it provided had a "causal relationship" to the contribution they are claiming. *Id*. More importantly, simply providing "conclusory statements regarding the causation or provision of a substantial contribution are insufficient to establish that a substantial contribution has been made." *Id*. After proving a causal relationship exists, the claimant must also prove that it was the claimant's action alone that lead to the contribution. The *Asarco* court noted that "a substantial contribution claim cannot be successful when the asserted contribution would have occurred without the claimant's involvement." *Id*.[1]

      k.      According to the considerable body of persuasive case law regarding the application for fees under Section 503, OFH must prove by a preponderance of the evidence that the work it performed made a substantial contribution. OFH must prove that OFH's actions alone had the specific, direct, and demonstrable benefit to the Debtor's estate and the other creditors. OFH must also prove that the substantial contribution made was under unusual or rare circumstance. OFH must further prove that its efforts were not ordinary, expected, routine, or duplicative efforts of a creditor in this case. Failure to prove

---

[1] *See In re Alert Holdings,* 157 B.R. 753, 759 (Bankr. S.D.N.Y. 1993) (denying the substantial contribution application when "even without the benefit of the LPOC's objection, most of the changes to the disclosure statement would have been made anyway."); *In re New Power Co.,* 311 B.R. 118, 124 (Bankr. N.D.Ga. 2004) (denying the substantial contribution application because "the Court must conclude that the Examiner would have been appointed . . . absent [the applicant's alleged contribution].").

any of these elements by a preponderance of the evidence is fatal to OFH's claim for substantial contribution.

l.    OFH argued that its actions caused the increase in the dividend to unsecured creditors from the initial proposal of the Debtor's initial plan of reorganization to the confirmed Amended Plan, and the increase is a "substantial contribution" to the estate. OFH further alleged that this increase in the dividend to unsecured creditors is due solely to its efforts in discovery of the Trust, the allegations of fraudulent transfers on the part of the Debtor, and garnering of the support and involvement of other creditors by OFH, forcing the Debtor to propose a more reasonable plan with a substantially more generous dividend to the unsecured creditors. Based on these conclusions, OFH boasts it has made a substantial contribution to the Debtor's estate.

m.    Contrarily, the Debtor argued that OFH did not discover the Trust. The Debtor plainly disclosed the existence of the Trust on the Debtor's Schedule B as early as the Petition Date and disclosed the specific conveyances to the Trust on the Debtor's Statement of Financial Affairs. According to the Debtor's Objection, even before the Petition Date, the Trust and the transfers were disclosed to OFH as a result of the Debtor's Motion and Notice to Claim Exempt Property served on OFH during OFH's judgment execution. The Debtor argued that no efforts of OFH led to the "discovery" of the Trust or any previously unknown asset or undisclosed information regarding the Trust.

n.    The Debtor consistently denies that she created the Trust with the intent to hinder, delay, or defraud any creditor and has always denied that any conveyances to the Trust were avoidable pursuant to Section 548. The Debtor does not believe that the Trust was avoidable and scheduled it with a value of $1.00 as of the Petition Date. The Debtor

claims that the negotiations with creditors, other than OFH, together with the restrictions of 11 U.S.C. § 1129 and the help of TrustAtlantic and the BA, caused the increase in the dividend to the unsecured creditors. OFH was not a part of that equation.

10. <u>OFH's Contributions to the Case</u>.

    a. In an analysis of the decision in *Asarco* and the preceding case law, the *In re R. L. Adkins Corp.* court found that courts have employed a variety of factors to determine whether a substantial contribution has occurred, including:

> (1) whether the services involved in the contribution provided a benefit to the estate; (2) whether the services involved in the contribution were undertaken just for the applicant alone or for the benefit of all parties in the case; (3) whether the applicant would have undertaken the same approach absent the expectation of compensation from the bankruptcy estate; (4) whether the benefit conferred through the applicant's contribution exceeds the cost which the applicant seeks to assess against the estate; (5) whether the efforts of the applicant were duplicative of efforts undertaken by statutory fiduciaries; (6) whether the applicant profited from the situation or rather faced substantial loss if it had not undertaken the approach that it did; and (7) whether the applicant had a negative effect on the case, such as making questionable objections to pleadings filed by the debtor or engaging in improper conduct in some other fashion which caused the debtor to incur costs or which delayed resolution of the case.

*In re R.L. Adkins Corp.*, 505 B.R. 770, 780-81 (Bankr. N.D. Tex. 2014) *quoting In re Energy Partners, Ltd.,* 422 B.R. 68, 80 (Bankr. S.D. Tex. 2009).

    b. This court finds the factors enumerated in *Adkins* instructive in analyzing the current matter. That analysis is as follows:

        i. <u>Whether the services involved in the contribution provided a benefit to the estate</u>.

            a) OFH claims that the increase in the dividend to the unsecured creditors is a substantial contribution to the estate by discovery

9

of the Trust, by its accusations of fraudulent transfers on the part of the Debtor, and by garnering the support of other creditors in the case. This court finds that OFH did not "discover" the Trust.  The Debtor demonstrated at the hearing that the Debtor's interest in the Trust was disclosed on the Debtor's Schedule B, the Debtor's Statement of Financial Affairs and was disclosed to several other parties including TrustAtlantic, the BA, and even OFH. This disclosure was also confirmed at the August 20, 2015 hearing by TrustAtlantic and the BA. Moreover, OFH never filed an action to determine whether the Trust could be invalidated to provide added benefit to the Debtor's estate. The analysis may be different if the Trust had been invalidated and its assets added to the bankruptcy estate.

  b)  OFH also argued that its accusations of fraudulent transfers contributed to the estate; however, no party in interest, including OFH, pursued that action against the Debtor to determine whether the transfers could be avoided in an attempt to provide an added benefit to the estate.

  c)  The BA argued that the increase in the dividend to unsecured creditors had nothing to do with the actions of OFH and had everything to do with the cooperative efforts of the Debtor, the BA, and TrustAtlantic. Prior to the BA's pleading that ultimately resulted in the amended treatment of the general unsecured class, OFH objected to essentially every effort to move this case toward confirmation. The BA reiterated at the hearing that the amendment in the Amended Plan causing the increase resulted purely

from negotiations and cooperating between the Debtor, TrustAtlantic and the BA. OFH was not a part of that equation.

        d)       OFH did not prove by a preponderance of the evidence that OFH's efforts caused the increase in proposed payments to the unsecured creditors.

    ii.    <u>Whether the services involved in the contribution were undertaken just for the applicant alone or for the benefit of all parties in the case and whether the applicant would have undertaken the same approach absent the expectation of compensation from the bankruptcy estate</u>.

        a)       The court will consider together the second and third factors in *Adkins*. It is obvious from OFH's actions and from the description of work completed that the efforts of OFH were for the sole benefit of OFH.

        b)       The Debtor, the BA, and TrustAtlantic argued in unison that reimbursing this creditor for fees and expenses incurred beginning in November, 2011 for its efforts to collect on the Default Judgment entered against the Debtor would be absurd. OFH began to incur fees more than two years prior to the Petition Date, and the majority of the fees represent the amount that OFH expended to hire counsel to aid OFH in collecting its state court judgment; therefore, those fees have no relationship to the case.

        c)       In particular, the fees generated by Kyle A. Baisley, Esq, an insider of OFH in 2011, stemmed from his efforts to collect on the promissory note owed to OFH. OFH seeks reimbursement of fees to Mr. Baisley in the amount of $9,450.00 to prosecute the Default Judgment

11

against the Debtor two years before the Petition Date. OFH also seeks fees from November, 2013 to May, 2015 for hiring local counsel in North Carolina for "purposes of domesticating TN judgment and collecting on same," and for reviewing the work done by Debtor's counsel in the current bankruptcy proceeding in the amount of $14,350.00. None of these actions provides a recognizable benefit to any party but OFH, nor do they pose even a tenuous relationship to the substantial contribution alleged by OFH. OFH would have taken the same course of action to collect on its judgment regardless of the expectation of compensation for those actions from the estate. It is clear that these actions were undertaken for the sole benefit of OFH.

      d)      The fees generated by the services of Mr. Rhyne, for which OFH requests reimbursement, cannot be found to benefit any other party but OFH. For example, Mr. Rhyne includes fees for reviewing the Debtor's petition, for executing an engagement agreement with OFH, for a conference with OFH to plot course of action in the case, for preparation for notice of appearance, for drafting a substitution of counsel, for updating OFH regarding the Motion to Convert filed by the Debtor, and for communications with his client regarding the Section 341 Meeting, among many others. These services rendered by Mr. Rhyne to OFH are ordinary and expected services of a creditor's counsel in a bankruptcy case and do not benefit the Debtor's estate or its creditors.

    e)  OFH did not file or pursue any actions that would have substantially affected the outcome of this case. OFH did not file a dischargeabilty action, an avoidance action for the fraudulent transfers it alleged, or an action to attempt to invalidate the Trust. OFH did not pursue any action to have a trustee appointed. It did not conduct a Rule 2004 Examination of the Debtor in an attempt to discover any assets previously undisclosed. All of these actions, if taken, would potentially indicate a service to benefit all creditors.

  iii. <u>Whether the benefit conferred through the applicant's contribution exceeds the cost which the applicant seeks to assess against the estate</u>. Even if OFH's efforts lead to a substantial contribution to the estate, which they did not, the benefit conferred to the estate does not outweigh the cost of OFH's administrative claim. OFH claims that its actions increased the payout to unsecured creditors by approximately $135,800.00 from the original plan of reorganization filed by the Debtor; however, now OFH seeks to take almost 37% (approximately $50,000.00) of that increase for itself to pay its administrative claim in addition the pro rata share of OFH claim as an unsecured creditor. That result is inequitable.

  iv. <u>Whether the efforts of the applicant were duplicative of efforts undertaken by statutory fiduciaries</u>.

    a)  Even if OFH did undertake the actions that caused the increased dividend to the unsecured class, they were duplicative of efforts undertaken by statutory fiduciaries and others.

13

      b)      The Debtor disclosed the existence and value of the Trust in more than one document and to more than one party in this case; therefore, OFH simply cannot take credit for discovery of that asset.

      c)      The allegations of fraudulent transfers made by OFH pursuant to Section 548(e) is the only effort that was not duplicative of any other party in the case; however, OFH did not actively pursue an avoidance action or request the appointment of a trustee to pursue the action. A mere allegation in a pleading does not constitute a substantial contribution.

      d)      OFH alleges that it garnered the support of other creditors to move toward confirmation. The arguments at the August 20, 2015 hearing on the Application indicate otherwise. The Debtor stated it had a large pool of general unsecured creditors and needed to have their support to obtain a confirmed plan. To meet that goal, the Debtor was responsive to questions and requests for information from the creditors, and the Debtor agreed to mediation to resolve the creditors' objections. The Debtor argued that during the mediation, all creditors, save one, came to the agreement that the resolution reached during the mediation was acceptable. While not specifically named, the court assumes OFH was the only objecting creditor.

      e)      The Debtor's statement was further supported at the hearing by both the BA and TrustAtlantic, asserting that it was their combined efforts, not the efforts of OFH, which lead to the acceptance of that class.

      v.      <u>Whether the applicant profited from the situation or rather faced substantial loss if it had not undertaken the approach that it did</u>. OFH is a general

unsecured creditor in this case and certainly profits from any increase in the payout or dividend allotted to other creditors in the same class.

vi. <u>Whether the applicant had a negative effect on the case, such as making questionable objections to pleadings filed by the debtor or engaging in improper conduct in some other fashion which caused the debtor to incur costs or which delayed resolution of the case</u>.

a) During the hearing, counsel for the Debtor, TrustAtlantic and the BA stated that they believed OFH was focused on pursuing its claim to the exclusion of others from the outset. Counsel for the Debtor and the BA alluded that OFH rejected substantially all proposals to move this case towards confirmation, resulting in additional expense to the estate and to other creditors.

b) Certainly, OFH is entitled to file objections, make arguments and reject resolutions in its own best interest, but as the court in *Adkins* stated, "[i]t goes against the spirit of § 503 to have the estate pay for both sides of the fight for confirmation when the parties had opposing goals." *In re R.L. Adkins Corp.,* 505 B.R. at 784.

c. The application of the *Adkins* factors indicate the efforts of OFH did not result in a substantial contribution to the estate or to other creditors as contemplated by 11 U.S.C. § 503(b)(3)(D). OFH cannot show, by a preponderance of the evidence, that its efforts *alone* achieved a direct and demonstrable benefit to the Debtor's estate that was of great worth or value. The increased dividend paid to unsecured creditors was a result of

several parties, including the Debtor, the BA, TrustAtlantic, participating in a collaborative effort to move the Debtor's case towards confirmation.

  d. Under the decision in *Adkins*, OFH must show a causal connection between its services and the substantial contribution, and mere conclusory statements will not suffice. OFH must further show that the contribution would not have occurred without its involvement. *In re RL Adkins Corp.,* 505 B.R. at 770. All OFH has shown is conclusory statements that its efforts caused a substantial contribution to the case. OFH has not indicated a single action, whether in the arguments of counsel at the hearing or in the documented fees for which it requests reimbursement that directly benefited the estate or other creditors.

  e. OFH fails to show that its efforts in this case were under rare or unusual circumstances as required by *Asarco*. Similar to the matter before this court, the creditors in *Asarco* were large and expectedly active creditors in the case. The *Asarco* court noted that, "merely being an active creditor . . . does not entitle that creditor to a claim for making a substantial contribution." *Asarco,* 2010 WL 3812642 at *10. The creditor in *Asarco* took actions similar to OFH presently, requesting that the court ignore the actions of other parties in interest in the case and recognize the status of their actions as not only "rare" or "unusual," but as the primary forces that caused the parties in question to undertake actions in the case. Here, OFH is asking that this court ignore the actions and efforts of the Debtor, TrustAtlantic, the BA, and others in bringing this case to confirmation, and further, to consider the ordinary actions of counsel for OFH in attempting to increase the dividend to its creditor client as extraordinary.

      f.    TrustAtlantic argued that the majority of OFH's participation in the case was as a general unsecured creditor, making arguments and taking positions that are standard creditor objections; therefore, these actions cannot constitute a "substantial contribution" under Section 503(b)(3)(D). The court agrees with TrustAtlantic.

11.    <u>Actual, Necessary, and Reasonable Expenses Pursuant to Section 503(B)(4) and Proper Documentation</u>.

      a.    An analysis of the fees requested under Section 503(b)(4) is unnecessary, as the court finds that OFH's efforts did not make a substantial contribution to the case under Section 503(b)(3)(D); however, the court will briefly consider the appropriateness of the applicant's documentation of the fees requested.

      b.    In order to have a successful claim for administrative expenses under Section 503, claimants will have to prove that the fees and expenses claimed were actual, necessary and reasonable. Sections 503(b)(3)(D) and (b)(4) require, "the bankruptcy judge to scrutinize claimed expenses for waste and duplication to ensure that expenses were indeed actual and necessary. They also require the judge to distinguish between expenses incurred in making a substantial contribution to the case and expenses lacking that causal connection, the latter being noncompensable. Necessarily, the bankruptcy court enjoys broad discretion in making these determinations." *In re DP Partners Ltd. P'ship*, 106 F.3d at 673-74.

      c.    The *On Tour* court explained that "[t]he requirements under 11 U.S.C. § 330 for documenting how time was expended are applicable to fee applications filed under 11 U.S.C. § 530(b)." *In re On Tour*, 276 B.R. at 418 (citations omitted). The court "has an

17

obligation to review the entire pleading with the above criteria in mind." *Id*. Pursuant to 11 U.S.C § 330, the court must consider the:

> nature, the extent, and the value of such services, taking into account all relevant factors, including the time spent on such services; the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3). The instant application as filed by OFH is deficient in this regard and should be disallowed in its entirety.

    d.    Exhibit A to the Application, which purports to detail the fees requested for reimbursement, is made up of three separate documents. The first appears to be a chart entitled "legal fees butterworth-All Dates," which includes several columns listing a date, account name, name of what appears to be the attorney performing the work, and an amount. This chart does not provide sufficient information for the court to perform the analysis required by the decision in *DP Partners* and *On Tour*, *supra*. The court cannot determine what actions or services generated these requested fees or the relationship to the case. The only information that seems apparent from this fee request is the date of the service and the amount charged. This information is not a sufficient explanation of the fees requested; therefore, this portion of the Application, requesting $18,503.31, should be denied in full.

  e.  The second document in Exhibit A appears to be the Statement of Account billed by Mr. Rhyne to OFH for the entire course of representation of OFH. The entries on this document begin with "Review of petition. Correspondence to client and engagement agreement" and end with "Travel to and from New Bern for [confirmation] hearing. Conduct hearing before Court. Report to Client." Although the entries made in this statement allow the court to perform the required analysis under Section 330, all of these entries and fees do not relate to actions that provided a substantial contribution to the Debtor's estate. These time entries are actions taken in the ordinary course of representing a creditor in bankruptcy. This portion of fees requested in the amount of $14,338.51 should be denied in full.

  f.  The final document in Exhibit A is a single page titled "Fee Summary" for services rendered by Mr. Baisley beginning in 2011. This fee summary provides little to no detail and prohibits the court from proper analysis. Further, the majority of the fees in the amount of $28,875.00 were generated pre-petition to collect on the Debtor's obligation to OFH, including obtaining the Default Judgment, and its transcription in North Carolina two years prior to the Petition Date. The remainder of the fees were for Mr. Baisley's review of Mr. Rhyne's work in the case. This fee summary is not only deficient in its recording of services performed pursuant to Sections 503 and 330, but also the fees requested in this summary provide no benefit to the Debtor's estate. The fee summary presented for Mr. Baisley's work never benefited the estate; therefore, this portion of the fees should also be denied in full.

## CONCLUSION

12. Congress states that in order to be granted an administrative claim under Section 503, the applicant would have to prove that its efforts in the case constituted an extraordinary circumstance that permits deviation from the priority structure. OFH has failed to demonstrate the extraordinary circumstances necessary.

13. OFH failed to show any direct significant or demonstrable benefit to the Debtor's estate or to the other creditors by its acts alone. This failure is fatal to OFH's substantial contribution claim *Asarco*, 2010 WL 3812642, at *7; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Application is denied.

END OF DOCUMENT